**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

D.D.M., by her parent and next friend,
O.M.S.,

          Plaintiff,

          v.

SCHOOL CITY OF HAMMOND,

          Defendant.

CAUSE No.: 2:17-CV-177-TLS

**OPINION AND ORDER**

The Plaintiff, D.D.M., by her parent and next friend, O.M.S., filed the present lawsuit against the Defendant School City of Hammond for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"). This matter is before the Court on cross Motions for Summary Judgment, filed first by the Plaintiff [ECF No. 26], and then by the Defendant [ECF No. 42]. For the following reasons, the Court GRANTS IN PART and DENIES IN PART both the Plaintiff's and the Defendant's motions for summary judgment.

**FACTUAL BACKGROUND**[1]

**A.     The Underlying Administrative Hearing**

The Plaintiff transferred into the Defendant's high school as a freshman during the 2015–16 academic year. *See* Due Process Hr'g Decision 6, ECF No. 1-1 ("first IHO Order"). Prior to the transfer, the Plaintiff had been found eligible for special education services. *Id.* However, the Defendant did not conduct any updated psychoeducational evaluation of the Plaintiff, nor did the Defendant create a new individualized education plan ("IEP") for the Plaintiff. *Id.*

---

[1] The parties largely agree on the material facts. *See* Def.'s Br. 1 n.1, ECF No. 43.

At some point during the 2016–17 academic year, the Plaintiff was present at an altercation that involved other students, after school hours and off school grounds. *Id.* at 7 ("The pixilated video [of the altercation, the only one submitted into evidence] showed no indication that the [Plaintiff] took part in the altercation verbally or physically."). Based on the altercation, the Defendant placed the Plaintiff on a forty-five-day interim alternative educational placement ("IAES"), which included four hours per week of homebound tutoring in all academic areas. *Id.* at 8. However, the Defendant did not provide these hours of tutoring. *Id.*

The parties engaged in an expedited due process hearing ("first due process hearing") on March 7, 2017, conducted before an Independent Hearing Officer ("IHO"). *Id.* at 5. The IHO summarized the Plaintiff's claims in four issues: (i) whether the Plaintiff's placement in an IAES was proper, (ii) whether the IAES provided appropriate services, (iii) whether the Defendant provided the homebound tutoring as required, and (iv) whether the Defendant had sufficient reason to believe the Plaintiff posed a substantial risk such that she should not return to school. *Id.* at 5–6. On March 21, 2017, the IHO found for the Plaintiff on all four issues. *Id.* 8–10. The Plaintiff did not pursue claims under § 504 or the Americans with Disabilities Act; and the Plaintiff did not explicitly receive every remedy she requested, although she received several she did not request. *Cf.* Due Process Hr'g Decision 8–10, ECF No. 1-1, *with* Expedited Due Process Hr'g Request 7, ECF No. 44-1. Neither party appealed the IHO's ruling.

Represented by different counsel, in May 2017 the Plaintiff sought a second due process hearing, related to an Individualized Education Plan ("IEP") meeting that took place on March 9, 2017, after the first due process hearing. *See* May 25, 2017, Second Due Process Complaint, ECF No. 44-14. On October 2, 2017, the IHO issued a decision in the second due process hearing, which found for the Defendant on all the issues presented in that matter. *See* Second Due Process Hr'g Decision, ECF No. 44-23 ("second IHO Order"). The Plaintiff, still represented by the new counsel, appealed that decision in federal court, as cause number 2:17-

cv-413-JVB-APR; that case has now been dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *See* ECF No. 26, 2:17-cv-413-JVB-APR.

**B.      Factual Background on Attorney's Fees**

1.      ***Settlement Discussions from Receipt of the First IHO Order Until Filing this Suit***

The Plaintiff received the IHO Order on March 23, 2017, and thus had until April 22, 2017 to file this suit. *See* Pl.'s Br. in Supp. of Mot. for Summ. J. 8, ECF No. 27 ("Pl.'s Br."); Def.'s Resp. in Opp. to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. 6, ECF No. 43 ("Def.'s Br.").

The Plaintiff's primary counsel, Margaret Jones ("Jones"), made the first demand for fees on March 28, 2017, in the amount of $30,212.41. *See* Mar. 28, 2017, Letter Jones to Conrad, ECF No. 44-4. The Defendant's primary counsel, Monica Conrad ("Conrad"), did not respond until April 13, 2017. *See* Apr. 13, 2017, Letter Conrad to Jones, ECF No. 44-5. In apologizing for the delay, the Defendant offered to toll the statute of limitations while a settlement agreement was drafted and executed. *Id*. at 2. The Defendant also countered with an offer of $28,301.54, nearly all the Plaintiff's requested fees. *Id*. The Defendant gave only one explanation for the lower number: a differentiated rate of $275 for prehearing work, and $300 for hearing work. *Id*.[2] The letter also described this offer as pursuant to 20 U.S.C. § 1415 as well as Indiana Article 7. *Id*.[3]

---

[2] While the Defendant's briefing says "the amount was based on duplicate entries" as well as the differentiated rate, the letter indicates only the differentiated rate and specifically disclaims that duplicate entries were removed. *Cf*. Def.'s Br. at 5 *with* Apr. 13, 2017 Letter, ECF No. 44-5.

[3] The letter reads, "[p]lease also be aware that this is also an Offer of Judgment is [sic] made for the purposes specified in Federal Rule of Civil Procedure 68 and pursuant to the IDEA . . ." *See* Apr. 13, 2017, Letter Conrad to Jones, 44-5. Despite this language, the Defendant disclaims that the letter intended to make a Rule 68 offer. *See* Def.'s Reply 11 n.5 ("the School has never [contended this was a settlement offer under Federal Rule of Civil Procedure 68] – the [Defendant] only contends that the offer complied with the Rule 68 timeline as required by 20 U.S.C. § 1415(i)(3)(D)(i)."). Thus, the Court will accept that this was not an offer under Federal Rule of Civil Procedure 68.

The Plaintiff responded to the offer on April 18, 2017, noting that she received the Defendant's April 13, 2017 letter in the mail on April 17, 2017.[4] *See* Apr. 18, 2017, Letter Jones to Conrad, ECF No. 44-6. The Plaintiff rejected the Defendant's offer, particularly the differentiated rate. *Id.* ("I am not aware of any rule or case law requiring attorneys to charge a separate rate for pre-hearing activities."). The Plaintiff noted the upcoming deadline to file the federal suit, acknowledged the suggestion that the parties toll the statute, but pointed out that no such agreement has been provided and there was no guarantee such an agreement could be approved and executed by the deadline. *Id.* The letter concluded with an invitation for the Defendant's counsel to call the Plaintiff's counsel if "you wish to discuss this matter further." *Id.* The Plaintiff sent the letter by fax and regular mail, as well as email, which again invited the Defendant's counsel to contact the Plaintiff's counsel. *See* Apr. 18, 2017, Email Jones to Conrad, 44-7.

Later on April 18, 2017, Conrad sent another letter to Jones, indicating that she had tried calling, was including a potential Tolling Agreement, executed by the Defendant, and wanted to continue settlement discussion. *See* Apr. 18, 2017, Letter Conrad to Jones, ECF No. 44-8. Although a single-page document, the Tolling Agreement contains several substantive errors, which might be typographical but render the language confusing. *See* Tolling Agreement, ECF No. 44-9.[5] For example, the Agreement states the Plaintiff is "conserving" the filing of a Complaint, rather than presumably "considering" filing it; and the Agreement may not be "changes" except by an instrument in writing signed by the "part" against whom enforcement of the change is sought, rather than presumably "changed" by the "party" in question. *Id.* The

---

[4] The Defendant's subsequent letter, dated April 18, 2017 as well, purports to include a fax confirmation sheet showing the letter was faxed to the office on April 13, 2017, *see* Def.'s Apr. 18, 2017, Letter Conrad to Jones, ECF No. 44-8; however, the confirmation is not included in the filed exhibit.

[5] While docketed as "March 12, 2018 M. Jones draft proposed settlement agreement," the document filed at ECF No. 44-9 is the Tolling Agreement referenced in ECF No. 44-8.

4

Agreement purports to relate only to a Complaint "seeking damages for alleged violations of the Individual with Disabilities Education Act," rather than specifying that it tolls the statute for filing a suit to seek attorneys' fees for enforcement of rights under the IDEA. *Id*.

Jones emailed Conrad regarding the letter and Tolling Agreement on April 19, 2017. *See* Apr. 19, 2017, Email Jones to Conrad, ECF No. 44-10. Jones highlighted the Tolling Agreement's flaws, particularly that it incorrectly states the cause of action and thus did not protect the Plaintiff from a statute of limitations defense and rejected the Agreement. *Id*. Jones offers times for a potential call between herself and Conrad the following day, April 20, 2017, *id*., but filed suit on April 19, 2017. *See* Compl., ECF No. 1.

2.    ***Settlement Discussions After Filing Suit***

The next correspondence is an April 26, 2017, letter from Jones to Conrad, indicating suit had been filed and providing an increased demand ($32,442.41, an approximately $2,200 increase). *See* Apr. 26, 2017 Letter Jones to Conrad, ECF No. 44-11.

Conrad replied on May 10, 2017, seeking confirmation that a settlement agreement to resolve the attorneys' fees issue would be appropriate but otherwise not responding to the increased demand. *See* May 10, 2017, Letter Conrad to Jones, ECF No. 44-12.

In a May 11, 2017, letter from Jones to Conrad, Jones noted that no response to the demand of $32,442.41 has been received and reiterates that demand. *See* May 11, 2017, Letter Jones to Conrad, ECF No. 44-13.

Jones sent the next letter, too, dated June 29, 2017, stating that Conrad has indicated the Defendant is no longer interested in resolving the fees matter because of the second due process hearing. *See* June 29, 2017, Letter Jones to Conrad, ECF No. 44-16. Jones also increased the demand to cover fees since early May, requesting $34,242.41. *Id*.

Later on June 29, 2017, Conrad responded, noting that she relayed to Jones several times that the Defendant is willing to settle, but only if the settlement covers all outstanding matters –

both this federal fee litigation and the second due process hearing, which at that time was still to be decided. *See* June 29, 2017, Letter Conrad to Jones, ECF No. 44-17. Also on June 29, 2017, the Defendant filed a Motion to Stay Proceedings [ECF No. 13], pending resolution of the second due process hearing, the Plaintiff responded [ECF No. 15], and the Defendant replied [ECF No. 16].

On July 12, 2017, Conrad sent a letter addressed to Jones as well as the Plaintiff's attorney in the second due process proceeding with the Defendant's proposed terms to settle all outstanding matters. *See* July 12, 2017, Letter Conrad to Jones, ECF No. 44-18. However, the letter contains no counter-offer or any specifics on the fees in this litigation, noting only "[t]he School is willing to negotiate **reasonable** reimbursement for attorney's fees," and "[w]e would anticipate that settlement discussions about attorney's fees would commence once both parties can reach agreements on the above numerated items." *Id*. (emphasis in original).[6]

On July 20, 2017, Jones responded to Conrad, providing an updated amount, additional terms, and citing the July 12, 2017, letter's willingness to negotiate fees. *See* July 20, 2017, Letter Jones to Conrad, ECF No. 44-20. Jones contacted the Defendant at least once between July 20, 2017, and filing for Summary Judgment, providing an updated amount of $39,310.43. *See* Sept. 12, 2017, Letter Jones to Conrad, ECF No. 44-22.

Filed on January 18, 2018, the Plaintiff's Summary Judgment motion demanded $48,705.43 in fees and costs: $30,212.41 for the underlying hearing and $18,493.02 for the federal litigation through January 15, 2018. Pl.'s Br. at 17–18.

---

[6] Apparently crossing with Conrad's July 12, 2017, letter in the mail, Jones sent Conrad a letter on the same date, which noted the Defendant had not responded to Jones' demand and detailed Conrad's communications that the Defendant would not negotiate attorneys' fees in the current litigation without a resolution of the second due process hearing, as well. *See* July 12, 2017, Letter Jones to Conrad, ECF No. 44-19. In that letter, Jones noted, "I am sure you can understand that it would be inappropriate for me to put pressure on my client to resolve that separate legal matter simply to facilitate settlement in my case." *Id*.

On February 2, 2018, the Defendant through counsel Sarah Blevins ("Blevins") requested an updated settlement demand; the Plaintiff provided one, in the amount of $50,205.43, including prejudgment interest. *See* Feb. 2, 2018, Emails between Jones and Blevins, ECF No. 44-25.

On February 9, 2018, Jones followed up with Blevins again by letter. *See* Feb. 9, 2018, Letter Jones to Blevins, ECF No. 44-26. In that letter, Jones noted that the Defendant had offered to settle the federal litigation for $30,212.41; the Plaintiff had counteroffered at $48,705.43, forgoing prejudgment interest. *Id.*

On February 22, 2018, the Defendant offered $32,000. *See* Feb. 22, 2018, Letter Blevins to Jones, ECF No. 40-6.[7] The Plaintiff counter-offered at $40,400, and that number was accepted. *See* Mar. 8, 2018, Emails, ECF No. 44-27. However, the settlement deteriorated over exact release language. *See generally* Pl.'s Mot. to Enforce Settlement Agreement, ECF No. 33; Def.'s Resp. in Opp. to Pl.'s Mot. to Enforce Settlement Agreement, ECF No. 40; Pl.'s Reply Br. in Supp. of Mot. to Enforce Settlement, ECF No. 41.

The Defendant filed its Cross Motion for Summary Judgment on May 16, 2018 [ECF Nos. 42–44]. The Plaintiff replied on June 29, 2018 [ECF No. 50], including a fourth declaration by Jones [ECF No. 51-1] requesting an additional $17,130 in fees for Jones' work from January 16, 2018, through June 28, 2018. The Defendant replied on July 13, 2018 [ECF No. 52].

The exact release language remained a stumbling block for the parties. *See generally* Pl.'s Notice to the Court ¶ 8, ECF No. 54; Def.'s Mot. to Vacate Mediation Deadline ¶ 5, ECF No. 55. Since the parties failed to reach an agreement regarding release language, it does not appear further negotiations have taken place. *See e.g.* the Plaintiff's Suppl. Decl. of Margaret A. Jones

---

[7] This letter is attached to the Defendant's Resp. in Opp. to Pl.'s Mot. to Enforce Settlement Agreement; both parties have incorporated the parties' briefs related to enforcing the settlement agreement into the summary judgment briefing. *See* Def.'s Br. at 10 n.3; Pl.'s Resp. to Def.'s Cross Mot. for Summ. J. and Reply Br. in Supp. of Her Mot. for Summ. J. ("Pl.'s Resp.") 6 n.4, ECF No. 50.

of Add'l Attorney Time Ex. A, ECF No. 63, Entry for 5/7/19. On November 2, 2020, the Court directed the Plaintiff to update her declarations supporting her bill [ECF No. 62], and the Plaintiff has done so [ECF No. 63]. Thus, the current total fees the Plaintiff claims are $67,570.43: $30,212.41 as fees and costs for the underlying hearing and $37,358.02 as fees and costs in this fees-for-fees federal litigation.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

These principles apply to cross-motions for summary judgment just as they would to a garden-variety summary judgment motion. *See Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002) (citation omitted). Thus, "[w]hen cross-motions for summary judgment are filed, '[e]ach movant has the burden of establishing the absence of any genuine issue of material fact on its own motion.'" *504 Redevelopment LLC v. SBA Site Mgmt., LLC*, 341 F. Supp. 3d 905, 912 (N.D. Ind. 2018) (citing *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002)). With cross-motions for summary judgment, the Court must construe all facts in a light most favorable to the party against whom the motion under consideration is made. *See Thomas v. Credit Mgmt., LP*, No. 1:16-CV-350-TLS, 2018 WL 2289900, at *3 (N.D. Ind. May 17, 2018) (citing *Allen v. City of Chicago*, 351 F.3d 306, 311 (7th Cir. 2003)).

**ANALYSIS**

"In any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)[8]; *see also Schaffer v. Weast*, 546 U.S. 49, 54 (2005) ("Prevailing parents may . . . recover attorney's fees."); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) ("The parties do not dispute that the IDEA's fee-shifting provision allows courts to grant attorney's fees to parents who prevail in an administrative hearing."). Courts apply the same principles governing attorney's fees awards in civil rights

---

[8] As relevant, the statutory language in its entirety reads:

(B) **Award of attorneys' fees**
   (i) **In general** In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs –
      (I) to a prevailing party who is the parent of a child with a disability
. . .
(C) **Determination of amount of attorneys' fees**
Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.
(D) **Prohibition of attorneys' fees and related costs for certain services**
   (i) **In general** Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
      . . .
      (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.
(F) **Reduction in amount of attorneys' fees**
Except as provided in subparagraph (G), whenever the court finds that—
   (i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
   (ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience; [or]
   (iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding;
   . . .
the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.
(G) **Exception to reduction in amount of attorneys' fees**
The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.
*See* 20 U.S.C. § 1415.

9

cases under 42 U.S.C. § 1988 to cases under the IDEA. *See Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 908 n.5 (7th Cir. 1996).

"Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "But if no settlement is reached, the district court must consider the lodestar figure–'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 433). "The lodestar figure is the 'starting point,'" and "[o]nce that figure is determined, the court may consider other factors set out in *Hensley*." *Enoch*, 570 F.3d at 823.

The Plaintiff submits that her counsel reasonably spent 98.6 hours on the prehearing work, at a rate of $300 an hour, with costs of $632.41, for a total of $30,212.41 on the underlying matter. *See* Decl. of Margaret Jones ¶ 9, ECF No. 27-1; Decl. of Nicole Goodson, ¶ 8, ECF No. 27-2. The Plaintiff also argues prejudgment interest should apply. The Plaintiff further submits that her counsel reasonably spent 123.1 hours seeking their fees, at a rate of $300 an hour, with costs of $428.02, for a total of $37,358.02 on the federal fees-for-fees litigation. *See* Decl. of Margaret Jones ¶ 12, ECF No. 27-1; Suppl. Decl. of Margaret A. Jones ¶¶ 5–6, ECF No. 63.

The Defendant agrees that it owes the Plaintiff some amount in fees, *see* Def.'s Br. at 11 ("[The Defendant] concedes that Plaintiff is entitled to some award of attorney fees in this case . . ."). However, the Defendant challenges the total amount owed. The Defendant argues that $12,598.52 is the appropriate fee award for the underlying hearing. *Id*. The Defendant further argues that fees for the federal litigation are precluded entirely, either by the Plaintiff's failure to accept a settlement offer or because the Plaintiff unreasonably protracted the litigation.

**A.      Reasonable Fees for the Prehearing Work**

The Defendant objects to both the 98.6 hours of prehearing work and the $300 per hour rate submitted by the Plaintiff. Next, the Defendant argues the total lodestar amount should be

reduced because of the Plaintiff's degree of success. The Defendant does not contest that prejudgment interest should apply.

1.     ***Reasonable Hours***

The Defendant first challenges the total hours, arguing that: (a) some time is clerical and should not be billed at an attorney's rate; (b) the travel fees and expenses should be eliminated because the Plaintiff could have hired local counsel; (c) a second, partner-level attorney was not necessary for the Plaintiff's case; and finally (d) certain time entries are vague.

A fee applicant, in deciding what to charge, is expected to exercise "billing judgment;" "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Hensley*, 461 U.S. at 434 (quotation omitted). Thus, hours that are excessive, redundant, or otherwise unnecessary should be excluded, "just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id*.

a.     *Clerical Time*

The Defendant first challenges a total of 3.0 hours of time as "clerical" work. Def.'s Br. at 13–14. The Defendant primarily relies on *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999). In *Spegon*, the Seventh Circuit concluded that the district court did not abuse its discretion when it disallowed the time spent on "simple administrative tasks that easily could have been performed by a full-time secretary," including "updating [counsel's] 'case list' and calendar . . . and holding office conferences with a paralegal regarding [] communications with the court's minute clerk." *Id*. at 553. The Seventh Circuit added, "[w]e seriously doubt these are the type of legal services an attorney would normally bill to [a] paying client because they contribute little if anything toward furthering Spegon's interest in this case." *Id*. "Courts in the Seventh Circuit have identified a variety of tasks as being administrative in nature, including organizing file folders, document preparation, copying or faxing documents, scheduling matters,

and mailing letters." *Moore v. Midland Credit Mgmt., Inc.*, No. 3:12-CV-166-TLS, 2012 WL 6217597, at *12 (N.D. Ind. Dec. 12, 2012) (citing *Spegon*, 175 F.3d at 553, and collecting cases).

The Defendant challenges as clerical: (i) buying office supplies (*see* Jones 2/26/17 entry for .8 hours); (ii) filing documents with the IHO (*see* Nicole Goodson 2/15/17 entry for .1 hours, and Jones 2/24/17 entry for .1 hours); and (iii) preparing the binders necessary for the IHO hearing (all remaining time entries challenged for this reason; 2.0 hours in total). Only the first, buying office supplies, appears to fall under the rational of *Spegon*; the Court will discount that entry as purely clerical, as stocking a law office with necessary supplies is not usually billed to clients. However, filing documents with an administrative body is not necessarily a task "easily delegable" to a non-professional assistant, *cf. Spegon*, 175 F.3d at 553 (citation and quotation omitted), and the Court finds the .2 hours a reasonable use of an attorney's time, at an attorney's rate. *Cf. Moore*, 2012 WL 6217597, at *13 ("Formatting the Complaint to comply with federal and local rules and drafting the summons and civil cover sheet are activities requiring some degree of legal knowledge or skill."). Similarly, preparing the binders are not purely clerical under *Spegon* because they furthered the Plaintiff's interests in the case and would normally be billed to the client. The Court finds the entries reasonable as well. *See, e.g., LeForge v. Feiwell & Hannoy, P.C.*, No. 1:11-CV-00526, 2015 WL 3485628, at *2 (S.D. Ind. June 2, 2015) (finding reasonable, and approving at an attorney's rate, "detail work that an attorney would do in anticipation of the final pretrial conference" including "preparation of exhibit binders for trial").

Thus, the Court finds appropriate a reduction of .8 hours for billing clerical time.

b.    *Travel Time and Costs*

The Defendant's next objection is to the attorneys' entries covering time spent traveling from Indianapolis to Hammond for the hearing and associated hotel bills. Def.'s Br. at 14–15.

"The presumption . . . should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time." *Henry v.*

12

*Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). The Defendant does not contest this presumption, but instead argues that local counsel—more local than Indianapolis—could have been hired, as shown by the Plaintiff using counsel who was closer for the second hearing that spring. *See* Def.'s Br. at 14–15. However, the Defendant has provided no case law supporting a conclusion that using counsel Indianapolis, rather than finding counsel in Hammond, was unreasonable. In *Mathur v. Board of Trustees of Southern Illinois University*, the Seventh Circuit noted that, even with other, more local counsel available, "[t]he realities of the legal community today mean that though *some* attorney could have represented [the Plaintiff], one factor or another prevented them from taking the case when he needed a lawyer." 317 F.3d 738, 744 (7th Cir. 2003). The Plaintiff's counsel has provided a declaration establishing that free and low-cost legal services in the area of special education law are not widely available to litigants in Indiana and that their services are in high demand. *See* Decl. of Margaret Jones ¶ 5, ECF No. 27-1. Thus, the Plaintiff found qualified, nearby counsel that offered to provide free legal services; the Defendant has not rebutted the presumption in favor of travel time by establishing that other, qualified counsel, even the counsel the Plaintiff used for the second due process hearing, was available for this hearing; nor has the Defendant established that Indianapolis is not "local" to the Northern District of Indiana. This is enough to distinguish the Plaintiff's situation from other cases cited by the Defendant, which both disallowed fees associated with *out-of-state* counsel getting to the relevant forum. *Cf. E.U. ex rel. Uhrina v. Valparaiso Cmty. Sch.*, Civil No. 2:07cv238, 2008 WL 2626786, at *7 (N.D. Ind. June 27, 2008) (noting, in fact, that an attorney with an office in Indianapolis was "local counsel" in the Northern District of Indiana, and allowing her travel time from Indianapolis to northwest Indiana, but disallowing her travel time from her home state of Texas to Indianapolis); *Atl. States Legal Found., Inc. v. Universal Tool & Stamping Co., Inc.*, 798 F. Supp. 522, 529–30 (N.D. Ind. 1992) (reducing expenses and hours

incurred on trips to the Northern District of Indiana by out-of-state counsel, but allowing the trips to meet with the Plaintiff, as that would have been necessary with Indiana counsel).

The Court finds the inclusion of time for travel from Indianapolis to Hammond and the associated expenses reasonable.

c.     *Second Attorney*

Next, the Defendant argues that all of the time spent by the Plaintiff's second attorney, Nicole Goodson ("Goodson"), should be disallowed because "this case presented no particular novel legal issues and was not a complicated one" and, thus, utilizing two partner-level attorneys "was excessive and unnecessary." Def.'s Br. at 15.

"Use of more than one lawyer is common in legal practice. Consultation among lawyers ensures that they do not overlook significant facts or inquiries. . . . Two lawyers are the minimum in much private litigation." *Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987). Sometimes, a district court is correct to "disallow[] time spent by two partners simultaneously doing the same thing," *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014), but attorney Goodson's time is not duplicative of Jones' time. The Plaintiff maintains, and the Defendant does not dispute, that "attorneys Goodson and Jones divided up tasks, reviewing exhibits and preparing for direct and cross examination of various witnesses. Ms. Goodson provided [the] opening statement and conducted the direct exam of a witness." Pl.'s Resp. at 17–18, ECF No. 50; *see generally* Decl. of N. Goodson, ECF No. 27-2. Because this was an expedited hearing, giving the attorneys only a little over a month between taking on the Plaintiff as a client and presenting at the hearing, splitting the work in this way is reasonable.

The Court finds using a second attorney was reasonable in this case and will not strike the entirety of Goodson's hours on that basis.

d.    *Vague Time Entries*

Finally, the Defendant challenges a number of Goodson's hours as too vague. The Plaintiff acknowledges that "some of attorney Goodson's time entries could have included more detail" but argues that "they are sufficiently detailed to allow the Defendant and this Court to find that her legal work was related to her representation of the Plaintiff." *See* Pl.'s Resp. at 18.

"Counsel are 'not required to record in great detail how each minute of [their] time was expended. But at least counsel should identify the general subject matter of [their] time expenditures.'" *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737, 745 (N.D. Ind. 2008) (quoting *Hensley*, 461 U.S. at 437 n.12). "As to the reasonableness of the hours expended, when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) (citing *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657–58 (7th Cir. 1985); *Hensley*, 461 U.S. at 433).

 The Court reviewed the entries challenged by the Defendant, *see* Def.'s Br. at 17, and concludes that several are too vague:

- the .4 "discussion of case," from 2/14/17, because it does not identify with whom the discussion took place, and Jones' bill does not have a corresponding entry indicating it was with her;

- the 1.4 "reviewed emails and attachments, responded," from 3/2/17, because it does not identify whose emails or a topic;

- the .1 "reviewed email," from 3/13/17, again because it does not identify whose emails or a topic for those emails.

*See* Decl. of N. Goodson, ECF No. 27-2.

15

Thus, the Court finds appropriate a reduction of 1.9 hours of attorney Goodson's time because the entries are inadequate to document the attorney's actions. *See Hensley*, 461 U.S. at 433. As to the remaining challenged entries, the Court finds that Goodson's entries are sufficient to allow the Court to determine either what she was doing or that she was working with Jones on the Plaintiff's case, either through discussion or email review.

In summary, taking into account all the entries challenged by the Defendants and the Court's conclusions, the Court finds that 95.9 hours of the attorneys' time is reasonable.

2.      ***Reasonable Hourly Rate***

Next, the Defendant argues the Plaintiff's rate of $300 per hour is unreasonable compared to its suggested prevailing, differentiated rate of $285 for every "prehearing" hour and $300 for the hearing itself. *See* Def.'s Br. at 17–21.

For fees under the IDEA, a reasonable hourly rate "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). In general, "[t]he best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez*, 755 F.3d at 553 (7th Cir. 2014). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.'" *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)).

Here, the Plaintiff's counsel has provided evidence that they bill $300 per hour for similar work and that $300 per hour has been their rate in similar cases against this same

Defendant. *See* Decl. of M. Jones ¶ 7, ECF No. 27-1; Decl. of N. Goodson ¶ 7, ECF No. 27-2.[9] The Plaintiff's counsel also put forward declarations confirming that $300 per hour is a reasonable rate for this kind of work in this geographic area. *See generally* Decl. of D. Philpot, ECF No. 27-3; Decl. of G. Rose, ECF No. 27-4. The Defendant's brief rejects all the Plaintiff's declarations regarding prevailing market rates, putting forward that $285 per hour for prehearing work and $300 per hour for hearing work as the singular "prevailing rate," and insisting that rate apply. Def.'s Br. at 18–20 (citing Aff. of C. Michael ¶ 12, ECF No. 44-29; Aff. of T. Blessing ¶ 12, ECF No. 44-30).

The case law on reasonable rates often discusses a range within which the rate falls, not a single number it must match. *See, e.g.*, *Montanez*, 755 F.3d at 555 ("Those rates are within the upper middle of the range supported by the evidence"); *Faust v. Menard, Inc.*, No. 2:11cv425, 2014 WL 1259963, at *2 (N.D. Ind. Mar. 26, 2014) ("Given the range of prevailing rates this court has previously found reasonable, the court will reduce the hourly fee to $300."). Even the Defendant's own affidavits say only that $285 per hour is within "the range of prevailing rates for this area." *See* Aff. of S. Michael ¶ 12, ECF No. 44-29; Aff. of T. Blessing ¶ 12, ECF No. 44-30. Therefore, even accepting only the Defendant's evidence, the Defendant has provided no factual or case law support for the conclusion that $300 per hour is not "based on rates prevailing in the community." 20 U.S.C. § 1415(i)(3)(C).

Thus, the Court finds that $300 per hour is a reasonable rate, even for prehearing work.

---

[9] The Defendant states that the Plaintiff "was not charged and did not pay any attorney fees" and, therefore, "the ordinary rate for private counsel in the community is relevant to determining the prevailing market rate," presumably instead of the Plaintiff counsels' suggested own rate. Def.'s Br. at 18. While the ordinary rate for private counsel in the community is, indeed, relevant to the inquiry, that the Plaintiff's attorneys provided their services free of charge in this case does not negate their evidence on what they usually charge, as private counsel in the community.

3.     ***Degree of Success***

The Defendant concedes that the Plaintiff was the prevailing party. *See* Def.'s Br. at 12

n.5. However, the Defendant argues that the Plaintiff's attorneys' fees should be reduced because

the Plaintiff was not wholly successful on her claim.

Although "presumptively reasonable," "the [lodestar] figure may be excessive when a

plaintiff has achieved only partial or limited success." *Thorncreek Apartments III, LLC v. Mick*,

886 F.3d 626, 638 (7th Cir. 2018) (citing *Hensley*, 461 U.S. at 436). "A plaintiff who achieves

'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only

partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez*, 755 F.3d at

556 (citing *Hensley*, 461 U.S. at 435–36).

The Defendant argues the Plaintiff's success is limited by: (i) not receiving all the relief

the Plaintiff sought, specifically not receiving 1:1 compensatory education services provided by

a special education teacher; (ii) the IHO declining to adjudicate Plaintiff's § 504 or ADA claims

and the Plaintiff not pursuing them; (iii) the Plaintiff not utilizing the services she was provided,

including an escort and much of the tutoring ordered; (iv) the IEP meeting taking place before

the IHO's decision was issued; and finally (v) that the Plaintiff filed and subsequently lost the

second due process hearing. *See* Def.'s Br. at 21–24.

However, the Plaintiff won on all four of the issues presented, *see* March 21, 2017 IHO

Decision 5–9, ECF No. 44-3; the Plaintiff received nearly all the relief sought, *compare*

Expedited Due Process Hearing Request 7, ECF No. 44-1, *with* first IHO Decision at 10–11,

with some additional relief the Plaintiff had not specifically requested, including a one-to-one

escort and directives to the Defendant that applied to all students and not just the Plaintiff. These

are "excellent results," and the Court finds no justification for a reduction in the lodestar number.[10]

None of the Defendant's points negate the Plaintiff's results. First, while the Defendant is correct that the IHO Order does not specify that a "special education" teacher provide the missed special education services,[11] the Defendant has provided no examples where such a small difference between the relief sought and awarded justified a reduction in the lodestar figure. Second, a Plaintiff's choice not to pursue certain claims is not the same as losing on those claims. Third, the Plaintiff may not have utilized the full tutoring services,[12] but the IHO Order entitled her to those services; such a situation is legally distinct from those cases, like those cited by the Defendant, where the parent removes the student from the school and the IHO Order cannot be enforced. Next, the IHO Order was not interim relief; it represents "actual relief on the merits of [the] claim[s and] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). That the IEP meeting which forms the basis of the second

---

[10] Under the IDEA, "[n]o bonus or multiplier may be used in calculating the fees awarded . . . ." 20 U.S.C. § 1415(i)(3)(C). Thus, the Court does not consider whether to adjust the award upward under *Hensley*. 461 U.S. at 434. However, the Plaintiff was successful not just for herself: she obtained relief applicable to other students served by the Defendant. The IHO Order makes clear the Defendant was not properly formulating IEPs for students beyond just the Plaintiff and orders it to rectify the situation. *Cf. William P. ex rel. Patrick P. v. Evergreen Park Sch. Dist. No. 124*, No. 07 C 0608, 2008 WL 5474245, at *4 (N.D. Ill. Dec. 31, 2008) (holding that, in part because the school district defendant was ordered to change its previous plan, the victory was not de minimis). While the Defendant has not argued that the Plaintiff's victory was de minimis, it is still worth noting this element of the Plaintiff's success.

[11] The Plaintiff argues that the IHO Order's relief covers both general and special education and, thus, contests the Defendant's factual proposition that the Plaintiff did not achieve all the relief sought. *See* Pl.'s Resp. at 27. The fact need not be resolved; even taking the Defendant's presented facts, the Plaintiff achieved nearly all the relief sought such that a reduction in lodestar figure is not warranted by the degree of success.

[12] Again, the Plaintiff contests this fact, *see* Pl.'s Resp. at 13; again, even assuming the Plaintiff did not utilize all the services provided, the IHO Order entitled her to them, and on that basis the legal relationship changed such that the Plaintiff achieved success.

hearing was not relief the Plaintiff sought in the first hearing[13] further underscores that the IHO

Order here was more than interim relief: the return to school and tutoring benefits have value

independent of the final resolution of the *second* hearing. *Cf. Hunger v. Leininger*, 15 F.3d 664,

670 (7th Cir. 1994) (holding that interim relief—in that case, in-home counseling services—did

not entitle the Plaintiff to relief where the ultimate goal was not achieved; but comparing cases

where the parent did achieve the main of the goal and noting that in such cases fees were

appropriate (collecting cases)). Finally, as a factual matter, the second due process hearing had

little to do with the first. Reviewing the second IHO Order [ECF No. 44-23] makes quite clear

that, while the time periods overlap, the second due process hearing primarily addressed the IEP

meeting held after the first hearing and many of the Plaintiff's interactions with the Defendant

after that. The Plaintiff's loss at the second due process hearing simply has no bearing on her

success at the first because the two hearings covered factually and legally distinct matters.

Thus, 95.9 hours of attorney work at the reasonable rate of $300, plus the appropriate

costs, unreduced because the Plaintiff achieved excellent results, yields a figure of $29,402.41 as

an appropriate award of attorneys' fees and costs for the work completed through the expedited

hearing.

## B.    Prejudgment Interest

The Plaintiff has requested prejudgment interest, a request the Defendant does not

contest. "[P]rejudgment interest is presumptively available to victims of federal law violations."

*McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003) (citation and

quotation marks omitted). "The basic purpose of prejudgment interest is to put a party in the

---

[13] The Defendant argues that, because the evaluation and modification of the IEP took place before the
IHO Order was issued, it cannot contribute to the Plaintiff's success. Def. Br. at 23. However, the
Plaintiff did not explicitly ask for the evaluation and modification of the IEP in her request for a hearing;
this was additional relief provided by the hearing officer. Like the one-to-one escort, such additional relief
should not be counted *against* the Plaintiff's success.

position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citing *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss.")).

Many district courts have applied prejudgment interest to attorneys' fees under the IDEA. *See, e.g.*, *K.S. v. Bd. of Educ. of Vandalia Cmty. Unit Sch. Dist. No. 203*, No. 16-CV-22, 2018 WL 3993628, at *18 (S.D. Ill. Aug. 21, 2018) (collecting cases); *see also Brianna O. v. Bd. of Educ. of City of Chicago, Dist. 299*, No. 10 C 2132, 2010 WL 4628749, at *13 (N.D. Ill. Nov. 8, 2010) (awarding prejudgment interest on the attorneys' fees for the underlying hearing). The Court agrees that prejudgment interest on the fees for the underlying hearing is appropriate here and will apply the average prime rate[14] of 4.54% beginning on March 21, 2017,[15] to the award of $29,402.41.

## C.      Whether the Plaintiff is Entitled to Any Fees for the Federal Litigation

The Defendant argues that the Plaintiff is not entitled to any fees for this federal litigation. First, the Defendant contends that it made an offer pursuant to 20 U.S.C. § 1415(i)(3)(D) such that fees are precluded from that point forward. However, the Court has found the relief to which the Plaintiff was entitled ($29,402.41) is greater than the offer of settlement ($28,301.54), such that § 1415(i)(3)(D)(i)(III) is not met and attorneys' fees are not prohibited.

---

[14] While the Plaintiff suggests Indiana's rate of 8%, the Plaintiff has not cited any case law applying the state's interest rate; and the cases awarding prejudgment interest used the average of the prime rate. *See* https://www.federalreserve.gov/releases/h15/ (last visited Nov. 19, 2020).

[15] The Plaintiff suggested, and the Defendant did not contest, that prejudgment interest begins to accumulate on the date the judgment was entered.

Next, the Defendant argues that under § 1415(i)(3)(F)(i), the Plaintiff's attorney is not entitled to fees because the Plaintiff's counsel has unreasonably protracted the final resolution of the controversy. The Defendant identifies several specific behaviors of the Plaintiff's attorneys as purportedly unreasonable: (1) declining to avoid filing a lawsuit by entering a tolling agreement, (2) filing a lawsuit over $1,910.60 in fees, and (3) failing to offer any compromise offer of resolution until ten months into this litigation. The Plaintiff argues the Defendant unreasonably protracted litigation by refusing to respond to settlement offers and taking unreasonable positions regarding settlement when it did respond.[16]

First, the Plaintiff's attorney was accurate in her description of the Tolling Agreement: it did not protect the Plaintiff's attorneys' fees in this litigation. *See* Tolling Agreement, ECF No. 44-9; Apr. 19, 2017, Email, ECF No. 44-10. Next, the Defendant delayed even responding to the initial demand by approximately half the statutory period. Given that the Defendant has never explained or justified its insistence on a differentiated, slightly lower rate, Defendant's initial offer appears unreasonable. *See* Apr. 13, 2017 Letter, ECF No. 44-5; Pl.'s Apr. 18, 2017 Letter, ECF No. 44-6. While perhaps filing of the federal litigation could have been delayed by an additional thirty days if the Plaintiff's attorneys had suggested different language for the Tolling Agreement, the Defendant had not suggested a tolling agreement until only several days before

---

[16] The Plaintiff further argues that, because the Defendant unreasonably protracted litigation, under 20 U.S.C. § 1415(i)(3)(G), the Court *cannot* reduce counsel's fees. Pl.'s Resp. at 10 ("[T]he Court *may not* reduce the amount of the parent's attorney fees if the Defendant unreasonably protracted the final resolution of the action." (emphasis added)). But in fact, under the statutory scheme, a finding that the Defendant unreasonably protracted litigation under § 1415(i)(3)(G) only nullifies § 1415(i)(3)(F)'s *requirement* that the Court reduce fees if it finds that the Plaintiff also unreasonably protracted the litigation. The Court must still determine what fees are reasonable and may award those fees. *See* § 1415(i)(3)(B)(i) ("[T]he court, in its discretion, *may* award *reasonable* attorneys' fees as part of the costs . . . ." (emphasis added)); *see also Somberg ex rel. Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 181–82 (6th Cir. 2018) (citing *Williams ex rel. Williams v. Fulton Cmty. Sch. Dist.*, 717 F. App'x 913, 917 (11th Cir. 2017)). However, the Court notes that some district courts have used language supporting the Plaintiff's view of the statute, albeit without fully analyzing the issue. *See, e.g., Y.Z. ex rel. Arvizu v. Clark Cmty. Sch. Dist.*, 54 F. Supp. 3d 1171, 1178 (D. Nev. 2014) (noting that, as a general rule, no fee reduction may be made if a defendant unreasonably protracted the litigation but holding that the defendant had not unreasonably protracted litigation).

the filing deadline and then provided a flawed one. Additionally, the Defendant did not continue

settlement negotiations in the next thirty days; for example, the Defendant did not respond to the

new demands. Thus, there is no factual basis to conclude that the Plaintiff's decision not to delay

filing suit by thirty days is unreasonable because nothing before the Court suggests the outcome

would be different.

Second, the Defendant repeatedly emphasizes that it offered only $1,910.60 less than the

Plaintiff's full demand. *See* Def.'s Reply at 10, 12 ("Plaintiff . . . has unreasonably protracted

final resolution of this fee dispute by turning a dispute over $1,910.60 into extensive federal

litigation . . . ."), and 13, ECF No. 52. However, when the Plaintiff did accept a monetary term, a

settlement was still never reached, largely because the Defendant wanted the Plaintiff to release

claims not at issue in this fee litigation. *See generally* Pl.'s Mot. to Enforce Settlement

Agreement, ECF No. 33; Def.'s Resp. to Mot. for Settlement Agreement, ECF No. 40; Pl.'s

Reply, ECF No. 41. Thus, the Defendant's representation that the fee litigation is only about the

$1,910.60 difference between the Plaintiff's original demand and the Defendant's original, pre-

suit offer is not factually supported.

Finally, the Defendant is the party that has refused to negotiate until ten months into the

litigation. The Defendant has been aware, for more than three years, that it owed some amount of

attorneys' fees on the underlying matter. Despite this knowledge, it made only one attempt to

negotiate the fees before suit was filed, an attempt that came quite late in the statutory period.

Then, the Defendant's only other attempt to settle this litigation, namely offering to negotiate

"reasonable" fees only after all other issues in the second due process hearing were settled, is no

attempt all. *See* July 12, 2017, Letter Conrad to Jones and Cleary, ECF No. 44-18. The

Defendant's steadfast refusal to negotiate this matter separately while the second due process

hearing was pending was an unreasonable position to take.[17] While related, the cases are distinct—a fact the Defendant implicitly admits by acknowledging the Plaintiff was, indeed, a prevailing party here. Therefore, it is the Defendant who did not attempt to settle until ten months into litigation, at which point the Plaintiff had been forced to file her Motion for Summary Judgment. The Defendant engaged in all this behavior despite multiple updated demands and requests for response from the Plaintiff. The Defendant's unwillingness to negotiate has unreasonably protracted this litigation, and so the Court is not required to lower the Plaintiff's fees. *See El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 430 (5th Cir. 2009) (holding a plaintiff's attorney had unreasonably protracted litigation by rejecting a favorable settlement offer (citing *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 211 (5th Cir. 1998) ("[F]ailing to settle can constitute protraction under [the IDEA].")))[18]

The Plaintiff is thus not barred from receiving some fees for the federal litigation.

**D.      Reasonable Fees for the Federal Litigation**

The Plaintiff submits that her counsel reasonably spent 123.1 hours seeking their fees in this litigation at the rate of $300 per hour. The Defendant argues that any fees for the federal litigation should be reduced for similar reasons to those for the underlying hearing: clerical time, unreasonable use of a second attorney, and vague time entries.[19] The legal standards for these arguments are the same as those articulated above.

---

[17] The Defendant's interest in a global resolution of all the issues it had with the Plaintiff, while not necessarily improper, could be an attempt to coerce the Plaintiff's attorney in this case into pressuring the Plaintiff to settle her other matter, which, as Jones notes in her letter, would be inappropriate. *See* July 12, 2017, Letter Jones to Conrad, ECF No. 44-19.

[18] Technically, each of these cases considers a Plaintiff's attorney under § 1415(i)(3)(F)(i); but as the language in § 1415(i)(3)(G) uses the same "unreasonably protracted" phrase, they are applicable.

[19] The Defendant again challenges the $300 rate but again does not present any additional support for its unreasonable position that $300 somehow unreasonably exceeds the Defendant's own suggested prevailing rate of $285.

As with some of the clerical entries in the underlying matter, most of the time challenged as "clerical" are entries where Jones filed items, and the Court declines to find them "easily delegable." *Cf. Spegon*, 175 F.3d at 553. The only entries the Defendant challenges which do appear to be clerical are Jones' 1/16/18 entry, which includes "scanned all documents, pleadings and exhibits with summary judgment motion, and related brief, appendix, affidavits, declarations and discovery" as part of a block-billed entry and the similar 6/29/18 entry for "redact[ing] documents/exhibits, scan[ning] and fil[ing Pl.'s Br. in Opp.]." *See* Def.'s Reply, ECF No. 52; Def.'s Resp., ECF No. 64. The Court agrees these actions are clerical and accepts the Defendant's proposed reduction of 1.1 hours in total to these two entries.

As discussed above, use of a second attorney is generally reasonable; the Court finds it so for the federal litigation as well. However, much of Goodson's time on the federal litigation is too vague; many entries only mention "reviewing" emails or documents, not their subject or sender or any action she took as a result of her review. The Court has independently reviewed attorney Goodson's time, and the only entries which are specific and involve Goodson taking action on this litigation are: the .4 entry on 6/2/17 noting a telephone call with Pam Cleary, the .2 entry on 10/17/17 noting a telephone call with Jones, the .1 entry on 1/3/18 relating to Goodson's declaration, and the 1.4 hours on 1/11/18 and 1/12/18, relating to editing the summary judgment motion. *See* Decl. of Nicole Goodson, p. 6–7, ECF No. 27-2. The Court approves only those entries, thus reducing Goodson's time by 2.4 hours.

The Defendant challenges three of Jones' entries, totaling .5 hours, specifically as providing "insufficient information to determine if [the entry] was reasonably related to fee litigation," or vague. *See* Def.'s Br. at 27–28. But none of these entries are vague; all clearly relate to the case at issue, and the Court approves all of them. However, the Court has independently reviewed Jones' bill, and Jones' entry on 5/10/18 for .7 for "legal research

regarding attorney fees and discovery issues" is too vague; nothing in the briefing or bill explains what research was required at that time, and the Court will reduce Jones' time accordingly.

The Defendant, although making no separate argument on the point, challenges many of Jones' entries as excessively long or redundant.[20] Specifically, the Defendant challenges:

- the .5 hours entered on 4/19/17 for filing the complaint; requests the entry be totally written off as clerical and excessive.

- the 1.0 hours entered on 6/16/17 for preparing a draft report of parties planning meeting; requests a reduction of .5 hours.

- the 1.2 hours entered on 7/10/17 for preparing a letter to M. Conrad in response to her letter of June 29, prepared lengthy email to client follow up on phone call from last week with attached letter to review; requests a reduction of .4 hours.

- the 1.7 hours entered on 12/27/17 for reviewing information from one of the Plaintiff's experts and preparing a draft affidavit; also the .3 on the same day for preparing and emailing the draft declaration for attorney Goodson; the Defendant requests no specific reduction, instead saying the entirety of both entries is unreasonable.

- the .5 hours entered on 1/2/18 for preparing supplemental responses to the Plaintiff's initial disclosures with new information; requests a deduction of .3 hours.

- the 1.3 hours related to the Motion to Stay Summary Judgment proceedings from 4/9/18, 4/10/18, and 4/12/18; requesting reduction of the entirety of the entries.

---

[20] While the Defendant also challenges the .3 hours entered on 5/16/17 for preparing letters to School officials requesting public records as redundant because the same information was received in discovery, the Defendant does not cite the entry it claims this duplicates nor the documents it claims were produced both places. However, the Court does discount that entry below in conjunction with discounting the Plaintiff's issuing of discovery.

- the .1 hours entered on 5/11/18, related to emailing the Plaintiff's experts to inform them the case was still active.

- the .4 hours entered, over separate entries, on 9/18/18, related to notifying the Court about mediation; requesting a full reduction of those entries.

The Court agrees that several of the above reductions would be appropriate, and reduces the 4/19/17 entry by .2, the 6/16/17 entry by .5; the 7/10/17 entry by .4; and the 1/2/18 entry by .3, for a total reduction of 1.4 hours. The Court will also disallow the entries related to the Motion to Stay Summary Judgment, as the Plaintiff has not included any entries related to the Motion to Enforce Settlement, and the Motion to Stay was based on the Motion to Enforce. Thus, a further reduction of 1.3 hours is appropriate. Finally, the Court agrees that the time related to negating the mediation deadline is also properly discounted as unnecessary, reducing the time by an additional .4 hours.

Finally, although not challenged by the Defendant, the Court makes a further reduction: the Plaintiff spent 3.2 hours on issuing forms of discovery[21] on a variety of dates (5/16/17, 8/14/18, 8/15/18, 11/6/17, 11/4/17, 1/3/18, and 5/15/18). The Court disallows all this time because the Plaintiff had all necessary information to file for summary judgment as soon as the Complaint was filed. As the Plaintiff has noted, the only issue in this case was the fees owed to the Plaintiff for the underlying litigation; engaging in 3.2 hours of litigation to generate only the fact that the Defendant spent 123 hours and used four attorneys on the underlying litigation (*see* Pl.'s Br. at 13) was also unnecessary.

---

[21] In contrast, the Defendant's choice to send the Plaintiff discovery means it should pay for all the Plaintiff's time spent answering.

In total, the Court is reducing the Plaintiff's requested hours in this litigation by 10.5[22]

hours, leaving a total of 112.6 hours to be awarded to the Plaintiff.[23] The reasonable rate is $300

per hour. Thus, reasonable fees are $33,780, plus costs of $428.02, for a total of $34,208.02.

Further, no downward percentage reduction for degree of success, per *Hensley*, is

appropriate here. The Court has found the Plaintiff entitled to 97.3% of the fees originally

sought; such a result is, like the result in the underlying hearing, excellent. *Cf. Scott M. v. Bd. of

Educ. of City of Chicago, Dist. 299*, No. 09 C 6728, 2011 WL 1118706, at *9 (N.D. Ill. Mar. 25,

2011) (declining to reduce a fee award when the Plaintiffs achieved 83% of what they initially

sought in the fee suit, and thus awarding $27,140 in fees for a $78,079.32 underlying award).

Additionally, the Defendant is responsible for unreasonably protracting the resolution of the fees

award; the Defendant first ignored the matter for much of the statutory period before the Plaintiff

filed in federal court, has steadfastly refused to negotiate even as the Plaintiff has made clear the

total bill increased, and has taken unreasonable settlement positions. *Cf. O. v. Bd. of Educ. of

City of Chicago*, No. 10 C 2132, 2011 WL 1750907, at *3 (N.D. Ill. May 6, 2011) (applying only

a 20% reduction and awarding $16,960.00 when the underlying award was only $31,491.60 and

had been reduced by 40%, "[i]n consideration of all of the relevant factors, including the degree

---

[22] The Defendant only requested a total reduction of 12.5 hours of the Plaintiff's proposed time. *See* Def.'s Br. at 27–28; Def.'s Reply at 14; Def.'s Resp. at 2.

[23] The total of 112.6 hours is greater than the hours spent on the underlying hearing, which does nothing to undermine the "impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *See Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988) (disallowing two-thirds of the lawyer and student hours spent for the preparation of a fees petition); *see also Spegon*, 175 F.3d at 554 (holding it "patently unreasonable" for the attorney to spend approximately the same number of hours preparing the fee petitions as he requested in pursuing the merits of the case and affirming a reduction from 25 hours to 1.6 hours). The Seventh Circuit and district courts have often reduced fees-for-fees in proportion to the underlying litigation. *See, e.g., Ustrak*, 851 F.2d at 987–88 (reducing the fees for fees to approximately five minutes for every hour); *Ozinga v. U. S. Dep't of Health & Human Servs.*, No. 13 C 3292, 2018 WL 2320933, at *8 (N.D. Ill. May 22, 2018) (collecting cases, including a reduction of the fees-for-fees work to a 100:1 ratio). Thus, awarding 112.6 hours to the Plaintiff for fees-for-fees litigation is exceptional. However, so were the Plaintiff's results and the Defendant's actions. If not for the Defendant's protraction of this litigation, the Plaintiff would not have had to spend so many hours recovering the fees to which she was entitled.

of success achieved, and factoring in the additional efforts Plaintiffs were forced to exert as a result of the District's inattention throughout this dispute").

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART both the Plaintiff's Motion for Summary Judgment [ECF No. 26] and the Defendant's Cross Motion for Summary Judgment [ECF No. 42]. The Court further awards:

1. The amount of $29,402.41 in attorneys' fees and costs for the first due process hearing, the matter underlying this litigation;

2. Prejudgment interest on the $29,402.41 award applied at a rate of 4.54% from March 21, 2017, to the present; and

3. The amount of $34,208.02 in attorneys' fees and costs for this federal litigation.

The Court directs the Clerk of Court to enter judgments in the above amounts in favor of the Plaintiff and close this case. The status conference set for November 20, 2020 is vacated.

SO ORDERED on November 19, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT